UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT E. SANTORA, an individual residing in the State of New York,<br><br>    Plaintiff,<br><br>  v.<br><br>HACHETTE BOOK GROUP, INC., a corporation of the State of New York,<br><br>    Defendant. | Civil Action No.: 7:25-cv-5114 |

## DEFENDANT HACHETTE BOOK GROUP, INC.'S MOTION TO DISMISS PLAINTIFF ROBERT E. SANTORA'S AMENDED COMPLAINT AND MOTION FOR A MORE DEFINITE STATEMENT

MAYER BROWN LLP
Allison M. Aviki
1221 Avenue of the Americas
New York, New York 10020
aaviki@mayerbrown.com
Tel: (212) 506-2500

*Counsel for Defendant*
*Hachette Book Group, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 4

LEGAL STANDARDS ....................................................................................................... 6

ARGUMENT ....................................................................................................................... 7

I.      THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM ................. 7

    A.      Plaintiff fails to allege a cognizable direct infringement claim. ........................... 7

        1.      Plaintiff fails to allege substantial similarity. ........................................... 7

        2.      Plaintiff fails to allege actual copying. .................................................... 14

    B.      Plaintiff fails to allege cognizable secondary infringement. ................................ 16

    C.      Plaintiff cannot state a claim under the Universal Copyright Convention or
        Berne Convention. ............................................................................................... 17

    D.      Plaintiff's claims are time-barred. ....................................................................... 18

    E.      Attorney's fees are unavailable. .......................................................................... 19

II.     THE COURT SHOULD ORDER A MORE DEFINITE PLEADING FOR ANY
    SURVIVING CLAIM ....................................................................................................... 20

III.    THE COURT SHOULD STAY DISCOVERY ................................................................ 23

CONCLUSION ................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdin v. CBS Broad. Inc.*,
  971 F.3d 57 (2d Cir. 2020)...........................................................................................7, 8, 12

*AJ Energy LLC v. Woori Bank*,
  2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019).........................................................................18

*Allco Fin. Ltd. v. Roisman*,
  2021 WL 12284779 (D. Vt. Sept. 16, 2021)............................................................................23

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
  671 F.3d 140 (2d Cir. 2011).......................................................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................................6, 11

*Baker v. Hannah-Jones*,
  2024 WL 5090086 (S.D.N.Y. Dec. 11, 2024) ...................................................................18, 19

*Burch v. Pioneer Credit Recovery, Inc.*,
  551 F.3d 122 (2d Cir. 2008)......................................................................................................23

*Bus. Casual Holdings, LLC v. YouTube, LLC*,
  2023 WL 6842449 (2d Cir. Oct. 17, 2023)...............................................................................16

*Capitol Recs., Inc. v. MP3tunes, LLC*,
  2009 WL 3364036 (S.D.N.Y. Oct. 16, 2009)...........................................................................16

*Carell v. Shubert Org., Inc.*,
  104 F. Supp. 2d 236 (S.D.N.Y. 2000).......................................................................................17

*Casanova v. Ulibarri*,
  595 F.3d 1120 (10th Cir. 2010) ................................................................................................20

*Castle Rock Ent., Inc. v. Carol Publ'g Grp., Inc.*,
  150 F.3d 132 (2d Cir. 1998)........................................................................................................7

*Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*,
  17 N.Y.3d 269 (2011) ...............................................................................................................22

*Cisneros Design, Inc. v. Bd. of Cnty. Comm'ns of Cnty. of Santa Fe, New Mexico*,
  2021 WL 1999546 (D.N.M. May 19, 2021)...............................................................................9

## TABLE OF AUTHORITIES
(continued)

**Page**

*Cole v. John Wiley & Sons, Inc.*,
   2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012)............................................................23

*Croak v. Saatchi & Saatchi, N. Am., Inc.*,
   174 F. Supp. 3d 829 (S.D.N.Y. 2016).......................................................12, 13, 14

*Dean v. Cameron*,
   53 F. Supp. 3d 641 (S.D.N.Y. 2014)...................................................................13, 14

*Del Mar TIC I, LLC v. Bancorp Bank*,
   2024 WL 1348501 (S.D.N.Y. Mar. 29, 2024) .........................................................24

*Faulkner v. Nat'l Geographic Enters. Inc.*,
   409 F.3d 26 (2d Cir. 2005)........................................................................................16

*Felberbaum v. LVNV Funding LLC*,
   2022 WL 493501 (S.D.N.Y. Feb. 17, 2022)............................................................24

*Fulks v. Knowles-Carter*,
   207 F. Supp. 3d 274 (S.D.N.Y. 2016)......................................................................11

*Galiano v. Fid. Nat. Title Ins. Co.*,
   684 F.3d 309 (2d Cir. 2012)......................................................................................11

*Hamil Am. Inc. v. GFI*,
   193 F.3d 92 (2d Cir. 1999)........................................................................................14

*Hartmann v. Amazon.com, Inc.*,
   2021 WL 3683510 (S.D.N.Y. Aug. 19, 2021).........................................................18

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,
   153 F.3d 82 (2d Cir. 1998)........................................................................................17

*Judith Ripka Designs, Ltd. v. Preville*,
   935 F. Supp. 237 (S.D.N.Y. 1996) ...........................................................................9

*KBL Corp. v. Arnouts*,
   646 F. Supp. 2d 335 (S.D.N.Y. 2009)......................................................................16

*Kelly v. L.L. Cool J.*,
   145 F.R.D. 32 (S.D.N.Y. 1992) ................................................................................23

*Klauber Bros., Inc. v. URBN US Retail LLC*,
   2023 WL 1818472 (S.D.N.Y. Feb. 8, 2023).............................................................17

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Living Media India Ltd. v. Parekh (Harshad)*,
1994 WL 68193 (S.D.N.Y. Feb. 28, 1994)...........................................................................17

*Mallery v. NBC Universal, Inc.*,
2007 WL 4258196 (S.D.N.Y. Dec. 3, 2007) ...........................................................................9

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)..................................................................................................................16

*Negrete v. Citibank, N.A.*,
2015 WL 8207466 (S.D.N.Y. Dec. 7, 2015) .........................................................................24

*O'Keefe v. Ogilvy & Mather Worldwide, Inc.*,
590 F. Supp. 2d 500 (S.D.N.Y. 2008)...................................................................................15

*Park v. Skidmore, Owings & Merrill LLP*,
2019 WL 9228987 (S.D.N.Y. Sept. 30, 2019).......................................................................19

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
602 F.3d 57 (2d Cir. 2010)..............................................................................................6, 8, 9

*Piuggi v. Good for You Prods. LLC*,
739 F. Supp. 3d 143 (S.D.N.Y. 2024).....................................................................................19

*PrimeSource,Inc. v. Pers. Res., Inc.*,
1998 WL 543366 (W.D.N.Y. Aug. 21, 1998) .........................................................................9

*Procter & Gamble Co. v. Colgate-Palmolive Co.*,
199 F.3d 74 (2d Cir. 1999).......................................................................................................15

*Psychic Readers Network, Inc. v. A&E Television Networks, LLC*,
2025 WL 2532292 (S.D.N.Y. Sept. 3, 2025).........................................................................23

*Sadowski v. Ng*,
2022 WL 799636 (S.D.N.Y. Mar. 15, 2022) .........................................................................16

*Simmons v. Stanberry*,
810 F.3d 114 (2d Cir. 2016).....................................................................................................18

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002)....................................................................................................................6

*Watson Lab'ys, Inc. v. Forest Lab'ys, Inc.*,
101 F.4th 223 (2d Cir. 2024) ..................................................................................................11

## TABLE OF AUTHORITIES
(continued)

Page

*Williams v. City of New Rochelle*,
2014 WL 2445768 (S.D.N.Y. May 29, 2014) .......................................................7, 20, 21, 22

*Yague v. Visionaire Publ'g LLC*,
2021 WL 4481178 (S.D.N.Y. Sept. 29, 2021)..........................................................................20

*Zalewski v. Cicero Builder Dev., Inc.*,
754 F.3d 95 (2d Cir. 2014)........................................................................................................8

**Statutes**

17 U.S.C. § 412...........................................................................................................................3, 20

17 U.S.C. § 504................................................................................................................................19

17 U.S.C. § 505......................................................................................................................... *passim*

17 U.S.C. § 507................................................................................................................................18

28 U.S.C. § 1927........................................................................................................................19, 20

**Other Authorities**

37 C.F.R. § 202.1 ..............................................................................................................................9

Fed. R. Civ. P. § 8.............................................................................................................4, 17, 18, 23

Fed. R. Civ. P. § 12...................................................................................................................*passim*

## INTRODUCTION

Plaintiff Robert Santora alleges that Hachette Book Group, Inc. hired him to create cover art for bestselling author Sandra Brown. According to Plaintiff, he designed a cover for Brown's novel *Slow Heat in Heaven*, after which Hachette never paid him, published *Slow Heat in Heaven* with his cover art but without his permission, and proceeded to create more than two dozen other Sandra Brown covers derivative of his originally commissioned artwork.

The most significant problem with Plaintiff's case is that not a single one of the so-called "derivative" covers resemble his in the slightest. Plaintiff's cover uses color blocking and a two-dimensional graphic image. It includes "Sandra Brown" in gold against a red backdrop on the top half of the cover; "Brown" is noticeably larger than "Sandra"; the bottom half depicts a two-dimensional red rose graphic against a gold backdrop; and the book title is superimposed in white so that the rose graphic appears between "Slow Heat" and "In Heaven." In contrast, Hachette's twenty-six accused covers feature both "Sandra" and "Brown" in a uniform size; a different, *photorealistic* image taking up the entire cover; and a book title that is always grouped together without being broken up by any image. A few examples demonstrate the point:

| Plaintiff's Asserted Cover (Ex. B) | Example of Hachette's Covers (Ex. D) | Example of Hachette's Covers (Ex. D) | Example of Hachette's Covers (Ex. D) | Example of Hachette's Covers (Ex. D) | Example of Hachette's Covers (Ex. D) |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

Further, Plaintiff's bare speculation that Hachette published and sold copies of *Slow Heat in Heaven* with his exact cover artwork is noticeably unsupported. Plaintiff tellingly points to no published copy of *Slow Heat in Heaven* bearing his cover art, and no Hachette copyright in a book with such cover art. To the contrary, the Hachette edition of *Slow Heat in Heaven*, identified in Exhibit D to the Amended Complaint (second cover above), bears a cover markedly different from Plaintiff's alleged cover art. It was also first published in 2012—more than a decade before Plaintiff bothered to register a copyright in his work and file suit—and yet Plaintiff alleges no basis for his delay.

Plaintiff's claims fail as a matter of law for several reasons.

*First*, Plaintiff's direct copyright infringement claim fails on the merits because the facts alleged do not support the required elements of substantial similarity (as required to allege illegal copying) or probative similarity (as required to show actual copying). No ordinary observer could discern any similarity between the works, let alone substantial similarity. Plaintiff's two-dimensional line drawing rose cover could not be more distinct from the photorealistic covers he says infringe his work—and his attempt to build an argument for substantial similarity based on the unprotectible elements of large font featuring an author's name and book title is unavailing. Nor do the alleged similarities in the positioning and styling of the author's name and book title— all unprotectible and commonplace elements familiar to the publishing industry—support probative similarities as required to plausibly allege actual copying, even where access is undisputed.[1]

---

[1] To be sure, Hachette has not located any record that Plaintiff was hired to design a cover for *Slow Heat in Heaven* or that Hachette ever received Plaintiff's allegedly infringed cover art. Hachette reserves the right to challenge Plaintiff's ability to prove this requirement at an appropriate time, should Plaintiff's claim survive the pleading stage.

*Second*, Plaintiff's allegation that Hachette supposedly "induced the infringement of others yet unknown" (FAC ¶ 19) fails to state a cognizable claim for secondary infringement. Any secondary infringement claim necessarily fails because, as explained above, Plaintiff has not adequately alleged direct infringement. Moreover, there is no cognizable, standalone claim for inducement to infringe, and Plaintiff's attempt to allege facts to establish contributory copyright infringement fails as a matter of law.

*Third*, to the extent Plaintiff seeks to assert claims under the Universal Copyright Convention and the Berne Convention, those claims fail because the Conventions only provide recognition of a foreign copyright and Plaintiff does not allege he holds a foreign copyright, nor does he allege the violation of any specific foreign copyright law.

*Fourth*, Plaintiff's request for attorney's fees is foreclosed by law. The Amended Complaint seeks attorney's fees under the Copyright Act, 17 U.S.C. § 505. But § 412 of the Copyright Act *bars* attorney's fees where, as here, the alleged infringement commenced before registration of the allegedly infringed work. Plaintiff argued by letter motion that he is instead entitled to fees under 28 U.S.C. § 1297 because Hachette's request for leave to file a motion to dismiss brands it a "vexatious" litigant. Setting to the side that this unfounded accusation appears nowhere in the FAC and was not the basis for Plaintiff's theory of recovery, seeking leave (which was granted) to avail oneself of the federal rules does not evidence vexatious conduct.

*Fifth*, Plaintiff's claims are time-barred from the face of the complaint. Plaintiff purportedly created his copyrighted cover in 2009, rendering this action more than a decade outside the Copyright Act's three-year limitations period.

If any portion of his claims survive (unlikely), the Court should order Plaintiff to provide a more definite pleading under Rule 12(e). Remarkably, across two different iterations of his

complaint, Plaintiff has omitted from his pleading the key detail that the parties previously executed an agreement and release in 2013. That agreement bars any claim for alleged acts occurring before December 21, 2013—including but not limited to Hachette's alleged publication of *Slow Heat in Heaven* with Plaintiff's cover artwork. Neither Plaintiff's Amended Complaint nor Plaintiff's response to Hachette's pre-filing requests upon discovery of this agreement provides any specific allegations of post-release infringement—despite the dispositive language of the release and despite Rule 8's requirement that Plaintiff allege the timeframe of the purported infringement with sufficient clarity. Thus, if the Court does not dismiss this case outright, it should order Plaintiff to file a more definite statement that (i) acknowledges the release, and (ii) particularizes any alleged post-release infringement.

In sum, the face of Plaintiff's Amended Complaint makes clear that there is no basis for his claims, and the Court should dismiss this action with prejudice. If, however, the Court determines that any claims survive, Plaintiff should be required to, at a minimum, file a more definite statement to particularize the basis for his claims, including but not limited to how they conceivably survive the 2013 release he granted Hachette.

## BACKGROUND

Plaintiff, who alleges he is "an established free-lance artist" (FAC ¶ 8), filed this action in June 2025 and shortly thereafter filed the Amended Complaint. ECF Nos. 1, 5. He alleges that Hachette hired him more than fifteen years ago to create cover art for books authored by Sandra Brown, though he does not reference a contract or any other basis to support that engagement. *See* FAC ¶ 9. Plaintiff alleges he created a cover for *Slow Heat in Heaven*, which features a two-dimensional line drawing of a red rose against a gold backdrop, as part of that agreement. *Id.* ¶ 10, Ex. B. Plaintiff also alleges that Hachette used his work to create a bestselling author's book without paying him his due (*id.* ¶ 12)—but declines to include in his pleading reference to any

agreement requiring such payment, or the fact of a 2013 agreement and release that squarely encompassed this exact claim. ECF Nos. 12-13. In any event, Plaintiff's cover did not make the final cut: Hachette published *Slow Heat in Heaven* in 2012 with an entirely different cover, one featuring a dead tree against a blazing sun. FAC ¶ 14, Ex. D. Although Plaintiff alleges he created his cover in 2009 under contract with Hachette, he did not obtain a copyright registration until August 2024, and that registration states the work was *not* "made for hire." *Id.* ¶ 11, Ex. C.

Based on these allegations, Plaintiff appears to bring a single count for violation of federal copyright law premised on two theories. First, he alleges Hachette "published and sold" *Slow Heat in Heaven* with his cover art without permission. *Id.* ¶ 13. Second, he alleges "on information and belief" that Hachette used "artificial intelligence" to create more than two dozen additional Sandra Brown covers derivative of his cover art. *Id.* ¶ 18, Ex. D. He alleges the covers "adopt original and distinctive features" of his cover art, *id.* ¶ 15, which Plaintiff asserts create a "streamlined look and feel" by featuring (i) the author's name in large full capital letters with a unified sans serif font, (ii) the author's name "highly dominant" and "positioned in the upper section," (iii) the book title in large type proximately in the lower half of the cover, and (iv) a depiction of a soft background image, *id.* ¶ 10.

In the course of investigating these claims, Hachette discovered the decade-old agreement and release ("Agreement"). *See* ECF No. 12. Under that Agreement, Hachette paid Plaintiff for certain prior work in exchange for a broad release, all with no admission of liability. Ex. A. Upon discovering the Agreement, Hachette promptly notified Plaintiff's counsel that the Agreement forecloses Plaintiff's claims and requested that Plaintiff either (1) indicate his agreement and dismiss the action with prejudice, or (2) in the event of disagreement, provide an explanation. ECF No. 12. In response, Plaintiff did not deny that pre-release claims are barred. *Id.* As to post-release

claims (if any), Plaintiff merely pointed to his vague assertion in the Amended Complaint that infringing sales "continue" (FAC ¶ 21), but provided no further details. ECF No. 12.

Hachette then notified the Court of the existence of the Agreement and received permission to move under Rule 12(e) for a more definite statement given the Agreement's obvious relevance to Plaintiff's claims. ECF No. 12. Plaintiff did not deny or challenge the enforceability of the Agreement. ECF No. 13.

## **LEGAL STANDARDS**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (quotation omitted). "When a court is called upon to consider whether the works are substantially similar," "what is required is only a visual comparison of the works." *Id.* (quotation omitted).

"If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Such motions are appropriate when, for example, "the movant shows that there actually is a substantial threshold question that may be

dispositive." *Williams v. City of New Rochelle*, 2014 WL 2445768, at \*2 (S.D.N.Y. May 29, 2014) (Román, J.).[2]

## ARGUMENT

## I.   THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM

The Court should dismiss the Amended Complaint in its entirety because Plaintiff does not plausibly allege a copyright infringement claim.

### A.   Plaintiff fails to allege a cognizable direct infringement claim.

To state a copyright infringement claim, a plaintiff must plausibly allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (quotation omitted). This dispute centers on the second element, which requires Plaintiff to show (1) "the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's work" and (2) "the defendant has actually copied the plaintiff's work." *Id.* (quotation omitted).[3] Plaintiff does not, and cannot, plausibly allege either.

### 1.   Plaintiff fails to allege substantial similarity.

"The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same." *Abdin*, 971 F.3d at 66 (cleaned up). "Where, as in this case, a

---

[2] Although a Rule 12(e) motion typically "must be made before filing a responsive pleading and must point out the defects complained of and the details desired," Fed. R. Civ. Proc. 12(e), the Court here granted Hachette leave to file a Rule 12(e) motion together with its Rule 12(b)(6) motion. ECF No. 13.

[3] The substantial similarity test also applies to claims alleging an unauthorized derivative work, well-established law that Plaintiff ignores in his unsupported contention that substantial similarity is "irrelevant." *Compare* ECF No. 10, *with e.g.*, *Castle Rock Ent., Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 143 n.9 (2d Cir. 1998) ("[I]f [a] secondary work sufficiently transforms the expression of the original work such that the two works cease to be substantially similar, then the secondary work is not a derivative work and, for that matter, does not infringe the copyright of the original work"); 1 Nimmer on Copyright § 3.01 (2025) ("A work is not derivative unless it has *substantially* copied from a prior work.").

work incorporates unprotectible elements from the public domain," courts "apply a more discerning observer test, which requires substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed work." *Id.* (cleaned up).

Here, Plaintiff's copyright infringement claim is based on two theories: (i) that Hachette published his version of *Slow Heat in Heaven*, and (ii) that Hachette used his art to create dozens of derivative works. FAC ¶¶ 13, 18. Because Plaintiff's theories are premised on the use of font and text incorporated from the public domain, the more discerning observer test applies. *E.g.*, *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 102 (2d Cir. 2014) (applying more discerning ordinary observer test to architectural designs that were "replete with uncopyrightable elements"). Under that test, the court must "extract the unprotectible elements" from consideration "and ask whether the protectible elements, standing alone, are substantially similar," while also considering the "total concept and overall feel." *Peter F. Gaito Architecture*, 602 F.3d at 66 (quotation omitted). Both of Plaintiff's theories fail.

As to Plaintiff's first theory, Plaintiff is wrong that Hachette published *Slow Heat in Heaven* with Plaintiff's cover art, and such allegation is contradicted by his own pleading. Plaintiff alleges he created the cover art on Exhibit B, which depicts a two-dimensional line drawing of a red rose against a gold backdrop, and that Hachette "published and sold" copies of *Slow Heat in Heaven* with his cover art. FAC ¶¶ 10, 13. But Plaintiff tellingly points to no published copy of *Slow Heat in Heaven* bearing his cover art, and no Hachette copyright in a book with such cover art. Instead, as Plaintiff later acknowledges, Hachette actually published *Slow Heat in Heaven* with the completely different cover pictured on Exhibit D—Hachette's cover featured a different color scheme and its photorealistic imagery fronted a dead tree with twisted branches illuminated by a blazing sun. *Id.* ¶ 14. Because Plaintiff's assertion that Hachette used his cover for *Slow Heat in*

*Heaven* "is contradicted by a document attached to the complaint," which plainly shows that Hachette did not use his cover, "the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011).

And to the extent Plaintiff claims that *Slow Heat in Heaven* infringes based on font type and/or the placement of the author's name and title on a book cover, those elements are not protectible. According to Plaintiff, his asserted cover and the Exhibit D covers feature "the author's name in large full capital letters with a unified sans-serif font" that present "a streamlined look and feel" compared to older Sandra Brown titles, which he says used "many differing styles" and "varying styles of fonts." FAC ¶ 9. He further asserts that the author's name is located "in the upper section" and the title "in the lower half." *Id.* ¶ 10.

To start, sans serif font and font size are not eligible for protection, as "mere variations of typographic ornamentation, lettering or coloring" and "typeface" are "not subject to copyright." 37 C.F.R. § 202.1; *see also Cisneros Design, Inc. v. Bd. of Cnty. Comm'ns of Cnty. of Santa Fe, New Mexico*, 2021 WL 1999546, at *7 (D.N.M. May 19, 2021) (sans serif font not protected); *PrimeSource,Inc. v. Pers. Res., Inc.*, 1998 WL 543366, at *4 (W.D.N.Y. Aug. 21, 1998) ("spacing of the letters and their precise shapes" not protected); *Mallery v. NBC Universal, Inc.*, 2007 WL 4258196, at *7 (S.D.N.Y. Dec. 3, 2007), *aff'd,* 331 F. App'x 821 (2d Cir. 2009) ("block capital letters" in "title sequences" is "textbook" example of unprotected element (quotation omitted)); *Judith Ripka Designs, Ltd. v. Preville*, 935 F. Supp. 237, 248 (S.D.N.Y. 1996) ("style" or "look" of design not protected, "only particular original designs").

Nor is Plaintiff's unoriginal placement of a bestselling author's name at the top of a book cover—or the title of the book in the bottom half—protectible. *E.g.*, *Peter F. Gaito Architecture*, 602 F.3d at 68 ("generalized ideas and concepts pertaining to the placement of elements" not

protected). To assess that, one need look no further than many of the covers Plaintiff alleges pre-date his commission by Hachette, which place Sandra Brown's name and her books' titles in the same relative locations on her covers. *Compare* FAC, Ex. B, *with* Ex. A.

And even if they were protectible, the fonts, coloration, and placement in the accused covers are indisputably different from Plaintiff's alleged cover art. Indeed, cursory side-by-side comparison of the two *Slow Heat in Heaven* covers (as shown below) renders obvious that (1) the author's first name is in smaller font in Plaintiff's purported cover; (2) the font colors are different; (3) the title in Plaintiff's cover is in upper and lower case, while Hachette's cover is in all caps; (4) the title in Plaintiff's cover is split up to avoid covering the rose line drawing, but not split up in Hachette's version; and (5) in Plaintiff's cover, the title and author are placed over different color block backgrounds, but in Hachette's cover, both the title and author are placed over the same photorealistic image of a tree and sun.

| Plaintiff's Asserted Cover (Ex. B) | Hachette's Cover (Ex. D) |
|---|---|
|  |  |

As to Plaintiff's second theory that Hachette used his art to create dozens of derivative works, a visual comparison of Plaintiff's cover art for *Slow Heat in Heaven* and the so-called derivative covers in Exhibit D shows zero substantial similarity. Again, Plaintiff's allegation that the Exhibit D covers "adopt original and distinctive features of" his *Slow Heat in Heaven* cover

art, FAC ¶ 15, based on font styles and text placement fails for the same reasons stated above. Such elements are not protected.[4] But even if they were, they are remarkably dissimilar—in addition to the differences noted above, the Exhibit D cover fonts are varied, some fonts are completely different, and the title placement varies among the covers. *Id.* at Ex. D. Some covers place the title in the middle while others place the title at the bottom. *Id.* For example, *Breath of Scandal* uses serif font (not sans serif); *Mirror Image* places the title in the center, but *Fat Tuesday* places the title at the bottom; and *Best Kept Secret* is in italicized font and is right-justified. *Id.* They are in no way substantially similar. *E.g.*, *Fulks v. Knowles-Carter*, 207 F. Supp. 3d 274, 286 (S.D.N.Y. 2016) (title cards with white, all capital letters in similar font centered in the middle of a solid dark color background not substantially similar because background color and font thickness were different).

After removing these unprotected elements, the actual images have nothing similar in common at all. Plaintiff's claimed version of *Slow Heat in Heaven* features a two-dimensional line drawing of a red rose against a gold backdrop. FAC, Ex. B. Yet in striking contrast, Hachette's Exhibit D covers feature multiple colors and photorealistic designs, primarily in the form of three-dimensional settings of people and places tending to evoke dangerous, mysterious, or foreboding feelings suggestive of their suspense-filled genre. *Id.* at Ex. D.

---

[4] Plaintiff's rank speculation that Hachette used "artificial intelligence" (FAC ¶ 18) to create the Exhibit D covers cannot be credited, even at the pleading stage. *E.g.*, *Watson Lab'ys, Inc. v. Forest Lab'ys, Inc.*, 101 F.4th 223, 235, 244 (2d Cir. 2024) (refusing to credit "speculation and conjecture" at pleading stage); *Galiano v. Fid. Nat. Title Ins. Co.*, 684 F.3d 309, 315 (2d Cir. 2012) ("speculation is insufficient to state a plausible claim"). What's more, the majority of the books depicted on Exhibit D were published many years ago, well before modern AI tools hit the market, making Plaintiff's allegation utterly implausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("only a complaint that states a plausible claim for relief survives a motion to dismiss" (emphasis added)).

For example, *Out of Nowhere* depicts an ominous lightning strike with blood dripping off the author's name; *Breath of Scandal* features an ephemeral-seeming girl in a dark field, backlit by car headlights; *Low Pressure* pictures a menacing, dark cloud rolling over an abandoned barn; and *Standoff* shows a police car, lights on, parked just beyond the awning of a building illuminated by sodium lights. FAC, Ex. D. Plaintiff's rose, by contrast, is just a rose. It doesn't drip blood, it isn't shrouded in fog, and it doesn't have any discernible connection to any word in the title.

| Plaintiff's Asserted Cover (Ex. B) | Sample of Allegedly Infringing Covers (Ex. D) |
| --- | --- |
|  | |

The remaining Exhibit D covers are equally dissimilar to Plaintiff's rose—most of the covers feature a night scene, a photorealistic image, and a sense of doom. *Id.* Certainly no ordinary observer would view the "aesthetic appeal as the same" and, tellingly, Plaintiff doesn't allege anyone ever has. *See Abdin*, 971 F.3d at 66.

Courts routinely reject substantial similarity for works that have far more in common than the cover art at issue here. In *Croak v. Saatchi & Saatchi, N. Am., Inc.*, for example, both works featured a mythical winged Pegasus emerging from a blue vehicle that was positioned at the same angle, as illustrated below. 174 F. Supp. 3d 829 (S.D.N.Y. 2016). Even so, the court held there was no substantial similarity because plaintiff's Pegasus was "strikingly realistic and life-like" whereas defendant's was "a pink, smiling, oversized stuffed animal," and even though both

vehicles were blue, one was a "lowrider" and the other was a "modern, family-friendly SUV." *Id.* at 836-37. The court further explained that the "overall feel" was different because defendant's work evoked "feelings of warmth, family, and fun," but plaintiff's evoked "raw power, independence, and escape." *Id.* at 838.

| ***Croak* plaintiff's work** | **Allegedly infringing work** |
|:---:|:---:|
|  | |

Similarly, in *Dean v. Cameron*, both works—the movie Avatar's "Hallelujah Mountains" and plaintiff's "floating islands"—presented "the natural world in a fantastical way by depicting airborne land masses," as illustrated below. 53 F. Supp. 3d 641, 648 (S.D.N.Y. 2014). The court held that the works were not substantially similar, however, because the Hallelujah Mountains were "depicted, in photorealistic detail, as massive floating islands of different shapes and sizes densely blanketed with plants, trees, and other vegetation," whereas plaintiff's works were "more stylized and fantastical, featuring smaller, egg-shaped islands" with "little or no vegetation other than a prominent, solitary tree almost as large as the island itself." *Id.* at 649. The court rejected other similarities as well, such as "stone arches," because plaintiff's were "smooth and set in barren

land or seascapes" while *Avatar's* were "jagged and uneven," "overgrown with trees and moss," and set in "a photorealistic ecosystem of mountains and valleys." *Id.* at 650.

| ***Dean* plaintiff's work** | **Allegedly infringing work** |
|---|---|
|  | |

As these examples illustrate, even works that have far more in common than the works here are not substantially similar. Indeed, the works in *Croak* and *Dean* bore a reasonable resemblance to each other but still fell short; the works here share *no resemblance at all* beyond the plainly unprotectible common use of an author's name and book title on a cover.

### 2.      Plaintiff fails to allege actual copying.

"Actual copying may be shown by direct or indirect evidence." *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999) (quotation omitted). When, like here, there is no direct evidence of copying, a plaintiff may establish copying circumstantially by showing that the alleged infringer "had access to the copyrighted work, *and* [that there are] similarities that are probative of copying between the works." *Id.* (quotation omitted) (emphasis added). Plaintiff alleges Hachette had access to his 2009 cover art for *Slow Heat in Heaven*, but he has not plausibly alleged similarities

between that cover art and any of Hachette's Sandra Brown covers that are probative of copying. The Court should dismiss his claim for this additional, independent reason.

"Similarities between works are probative of copying if the similarities between the two works . . . would not be expected to arise if the works had been created independently." *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 517 (S.D.N.Y. 2008) (quotation omitted). "Not all similarities between creative works are 'probative similarities.'" *Id.* "For example, 'the fact that two songs are similar in the sense that they both use 4/4 time . . . is not . . . a probative similarity, because it is so commonplace that it is not unlikely to arise [in] independently created works.'" *Id.* (quotation omitted). "The less creative the choice, the stronger the inference that the same choice or group of choices made by another was made independently." *Procter & Gamble Co. v. Colgate-Palmolive Co.*, 199 F.3d 74, 78 (2d Cir. 1999).

Here, the alleged similarities are all so commonplace that they cannot plausibly support an inference of copying rather than independent creation. The only alleged similarities are the use of the author's name in large full capital letters with a sans serif font, the positioning of the author's name in the upper section of the cover, and the positioning of the book title in large type in the lower half of the cover. FAC ¶ 10. These elements are ubiquitous in the publishing industry— evidenced by the FAC itself, which highlighted many pre-2009 Sandra Brown covers that featured the author's name in full capital letters in the upper section of the cover, with the book title positioned in large type in the lower half of the cover. FAC, Ex. A. Given all font choices are necessarily either serif or sans serif, the choice of a sans serif font is not a probative similarity, either. *Procter & Gamble Co.*, 199 F.3d at 78 (Where "only so many choices exist[]," it is more likely that similarities are "attributable to independent creation rather than copying"). Thus,

Plaintiff has not plausibly alleged probative similarities, and therefore has not alleged actual copying as required to state a claim for copyright infringement.

### B.    Plaintiff fails to allege cognizable secondary infringement.

"One who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 40 (2d Cir. 2005) (cleaned up).[5] Plaintiff's secondary liability theory falls short of that mark for at least two reasons.

*First*, Plaintiff does not and cannot state a direct infringement claim, so any secondary infringement claim automatically fails. *Id.* at 40.

*Second*, Plaintiff's scant allegations that Hachette is secondarily liable based on inducing infringement (FAC ¶¶ 19-20) fails to meet the pleading standard.[6] As an initial matter, the Copyright Act does not "provide[] for an inducement to infringe claim that is distinct from contributory infringement." *KBL Corp. v. Arnouts*, 646 F. Supp. 2d 335, 345 (S.D.N.Y. 2009); *Capitol Recs., Inc. v. MP3tunes, LLC*, 2009 WL 3364036, at *4 (S.D.N.Y. Oct. 16, 2009) ("[T]his Court cannot find that inducement to infringe is a separate claim from contributory infringement."). And Plaintiff has not alleged any facts to support a theory of contributory liability. *Sadowski v. Ng*, 2022 WL 799636, at *7 (S.D.N.Y. Mar. 15, 2022) (courts "routinely dismiss

---

[5] Plaintiff's reliance (ECF No. 10 at 2) on *Faulkner* is telling, as the district court there dismissed the contributory infringement claims. *Id.* Meanwhile, beyond Plaintiff accurately quoting (at *id.*) the text from the Supreme Court's landmark decision in *Grokster*, that case dealt with widespread peer-to-peer file sharing and has no discernible applicability here. *See generally Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005).

[6] Nothing in the FAC or Plaintiff's pre-motion letter (ECF No. 10) suggests he is pleading a theory of vicarious liability. To the extent he is, he fails to provide any allegations—let alone plausible ones—that Hachette is vicariously liable. *See Bus. Casual Holdings, LLC v. YouTube, LLC*, 2023 WL 6842449, at *3 (2d Cir. Oct. 17, 2023) ("Vicarious liability for copyright infringement may arise only when the defendant had the 'right and ability to supervise that coalesced with an obvious and direct financial interest in the exploitation of copyrighted materials.'" (quotation omitted)).

allegations of vicarious and contributory copyright infringement" under Rule 8 when the complaint "fails to allege facts to support these secondary theories of liability") (collecting cases). Plaintiff's assertion that Hachette induced "others yet unknown" by selling books (FAC ¶ 19) is "mere boilerplate" that cannot salvage his claim. *Klauber Bros., Inc. v. URBN US Retail LLC*, 2023 WL 1818472, at *8 (S.D.N.Y. Feb. 8, 2023) (holding conclusory allegations insufficient to plead secondary infringement claim).

### C. Plaintiff cannot state a claim under the Universal Copyright Convention or Berne Convention.

The Court should also dismiss Plaintiff's purported "claims" under the Universal Copyright Convention and Berne Convention. *See* FAC ¶ 7. "Both conventions provide for works copyrighted in signatory foreign countries to be given copyright protection under United States law." *Living Media India Ltd. v. Parekh (Harshad)*, 1994 WL 68193, at *2 (S.D.N.Y. Feb. 28, 1994). According to Plaintiff, Hachette "violated" the conventions and unnamed "international copyright laws." FAC ¶ 22. Once the confusion is cut through, Plaintiff's argument falls down.

As an initial matter, the Universal Copyright Convention and Berne Convention simply provide recognition of a foreign copyright in a member state. *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 89 (2d Cir. 1998). Plaintiff does not allege that he holds or is asserting a foreign copyright—to the contrary, he's clear he's asserting a copyright registered in the United States. FAC ¶¶ 11-12.

Next, his vague allegation that Hachette violated "international copyright laws" (FAC ¶ 7) is also a non-starter. In stark contrast to the case he cited to this Court (ECF No. 10 at 2), in which the plaintiff had "alleged the violation of specific foreign copyright laws," Plaintiff here offers no such specificity. *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 258 (S.D.N.Y. 2000); *id.* (holding Berne and UCC Conventions "do not offer an independent jurisdictional basis for suit in

U.S. federal court"). Courts reject attempts to assert claims under "unnamed laws of unspecified foreign countries" because such allegations are "too vague" to meet Rule 8's pleading standards. *E.g.*, *Hartmann v. Amazon.com, Inc.*, 2021 WL 3683510, at *1, 10 (S.D.N.Y. Aug. 19, 2021).

### D. Plaintiff's claims are time-barred.

As another independent ground for dismissal, Plaintiff's claims are time-barred. "The Copyright Act provides that '[n]o civil action shall be maintained under the [Act] unless it is commenced within three years after the claim accrued.'" *Baker v. Hannah-Jones*, 2024 WL 5090086, at *2 (S.D.N.Y. Dec. 11, 2024) (quoting 17 U.S.C. § 507(b)). In the Second Circuit, a copyright infringement claim accrues when the "holder discovers, *or with due diligence should have discovered*, the infringement." *Id.* (emphasis added) (quotation omitted).

Plaintiff alleges he created his cover art in 2009; he recognizes that his infringement claim is vulnerable to the three-year bar. FAC, Ex. B; ECF No. 10 at 2. *See Simmons v. Stanberry*, 810 F.3d 114, 116 (2d Cir. 2016) (claims time-barred when plaintiff was aware of alleged infringement, but waited more than three years to file suit). Attempting to avoid the bar, Plaintiff asserts he can establish that he "discovered the asserted infringement within three years of filing the complaint." ECF No. 10 at 2. To start, the FAC nowhere alleges that. But further and critically, even on the 12(b)(6) standard, courts are not required to accept as true such an incredulous argument.

Sandra Brown is a *New York Times* bestselling author and Plaintiff alleges Hachette commissioned him to create a cover for one of her novels, which he completed in 2009. *See* FAC, Exs. A & D (identifying Brown as "*New York Times* bestselling author"); *id.*, Ex. C (completion date in 2009). The idea that Plaintiff, whose livelihood he claims is based on "creating artwork for publishing houses for use as book covers" (FAC ¶ 8), simply neglected to notice that Hachette allegedly used that exact cover on a bestselling author's book without paying him defies credulity. *AJ Energy LLC v. Woori Bank*, 2019 WL 4688629, at *4 (S.D.N.Y. Sept. 26, 2019), *aff'd*, 829 F.

App'x 533 (2d Cir. 2020) (rejecting allegations that "strain credulity"); *Baker*, 2024 WL 5090086, at \*2 (ordering plaintiff to show cause why copyright infringement claim should not be dismissed as time-barred when, among other reasons, publication was "widely publicized" and "backed by the bullhorn of the New York Times").

This Court should hold that Plaintiff's claim is time-barred, at least because he was on constructive notice of his claim's accrual more than a decade ago. *See Park v. Skidmore, Owings & Merrill LLP*, 2019 WL 9228987, at \*4 (S.D.N.Y. Sept. 30, 2019) (finding plaintiff had constructive notice and dismissing time-barred copyright infringement claim).

### E.    Attorney's fees are unavailable.

"The Copyright Act provides that no award of statutory damages or attorney's fees, as provided by sections 504 and 505, shall be made for any infringement of copyright commenced after first publication of the work and before the effective date of its registration." *Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 166 (S.D.N.Y. 2024) (cleaned up). Plaintiff cannot assert statutory damages or attorney's fees for any books published before the effective date of his copyright, August 11, 2024. FAC, Ex. C. And all of Hachette's books at issue here were published well before that 2024 date—a fact that is plainly the foundation for Plaintiff's concession that statutory damages are unavailable. ECF No. 10 at 2-3. Curiously, while acknowledging the timeline forecloses statutory damages, Plaintiff simultaneously asserts that he "may well be entitled to attorney fees under 28 U.S.C. § [1927][7]" because Hachette purportedly has asserted "inconceivable defenses." *Id.* at 3. Setting to the side that Hachette has yet to file an answer outlining its defenses (because the FAC is legally insufficient on its face), there is no exception under the Copyright Act that considers the merits on a defendant's defenses as potential grounds

---

[7] Plaintiff cites "28 U.S.C. § 1297," which appears to be a typographical error. *See* ECF No. 10.

for rehabilitating an otherwise ineligible claim for attorney's fees based on the date of copyright registration. The statute is crystal clear that attorney's fees are unavailable "before the effective date [of] registration." 17 U.S.C. § 412(1). Plaintiff's untethered claim would fly in the face of the purpose of the statute, which is "intended to provide additional remedies of statutory damages and attorney's fees as incentives to register." *Yague v. Visionaire Publ'g LLC*, 2021 WL 4481178, at *1 (S.D.N.Y. Sept. 29, 2021) (quotation omitted). Plaintiff cannot distract from his failure to register his copyright earlier, rendering his access to fees foreclosed by law.

Moreover, Plaintiff's assertion that he is entitled to attorney's fees under 28 U.S.C. § 1927, a provision providing fees when a party "vexatiously" increases litigation costs, makes no sense. Plaintiff initially sought fees under the Copyright Act (FAC at 9), and only pivoted to the vexatious-litigant statute in response to Hachette's letter brief seeking leave to file a motion to dismiss (ECF No. 10), which the Court granted (ECF No. 11). That is a far cry from vexatious litigation that would entitle Plaintiff to fees.

## II.   THE COURT SHOULD ORDER A MORE DEFINITE PLEADING FOR ANY SURVIVING CLAIM

Plaintiff's Amended Complaint is deficient for the reasons stated above. But if the Court determines that any claims survive, the Court should, pursuant to Rule 12(e), direct Plaintiff to file a more definite statement that:

1. acknowledges that Plaintiff agreed to a release of all present or future claims against Hachette for any act predating December 21, 2013; and

2. particularizes the remaining allegations, if any, on which Plaintiff bases his claim for copyright infringement, including by specifying the date or time frame of the alleged infringing act.

A more definite statement is warranted where there is "a substantial threshold question that may be dispositive, such as a critical date." *Williams v. City of New Rochelle*, 2014 WL 2445768, at *2 (S.D.N.Y. May 29, 2014) (Román, J.) (citing, *inter alia*, *Casanova v. Ulibarri*, 595 F.3d 1120,

1125 (10th Cir. 2010) ("[T]he preferable procedure when a specific date could support a dispositive defense motion is to require the plaintiff to provide a more definite statement under Fed. R. Civ. P. 12(e).")). Here, the dates of Hachette's allegedly infringing acts are indeed critical.

As explained below, Plaintiff previously agreed to a general release that bars his claim for copyright infringement because it stems from alleged acts occurring before December 21, 2013. Ex. A. Courts, including this one, have granted Rule 12(e) motions in similar circumstances. In *Williams*, for example, the plaintiff asserted claims that fell within the scope of an enforceable general release. 2014 WL 2445768, at *1. The defendant filed a motion under Rule 12(b)(6), arguing the plaintiff's pre-release claims were barred, and a motion under Rule 12(e), arguing the plaintiff must allege dates to clarify what allegations arose from post-release conduct. *Id.* This Court agreed, dismissing the plaintiff's "current claims arising before" the release and directing the plaintiff to file a more definite statement to "more particularize the remaining claims." *Id.* at *2-3.

Here, similar to *Williams*, Plaintiff's claim is based on allegations falling squarely within the scope of a general release. Also here, similar to *Williams*, Plaintiff's Amended Complaint does not allege any post-release infringement with any specificity. A more definite statement is required.

On December 21, 2013, the parties executed the Agreement in which Plaintiff—represented, as here, by the Law Offices of Gerard F. Dunne—granted Hachette a broad, general release ███████████████████████. Ex. A, 2-3. █████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████. *Id.* Plaintiff agrees, as he must, that the Agreement is enforceable. ECF No. 13; *see also Williams*, 2014 WL 2445768, at \*2 (holding general release is a "valid, enforceable legal document"); *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 277 (2011) (broad release of claims enforceable "whether past, present or future, actual or contingent").

Under this Agreement, Plaintiff released Hachette from his current claim for copyright infringement to the extent he is suing for any act(s) occurring before December 21, 2013. And because ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████—such as sales of a book published prior to December 21, 2013 with an allegedly infringing cover. Most (if not all) of the Amended Complaint appears to be based on such pre-release alleged acts, such as Hachette's alleged publication of *Slow Heat in Heaven*. The Court should require Plaintiff to file a more definite statement excising the pre-December 2013 allegations and damages that Plaintiff acknowledges are squarely foreclosed by the Agreement.

In addition, the Amended Complaint does not provide any specific allegations as to post-December 2013 infringement. Plaintiff does not allege, for example, *when* Hachette supposedly "created or authorized the creation" of additional book covers using Plaintiff's cover art, let alone when Hachette supposedly commissioned him for the allegedly infringed cover art or when he supposedly provided it to Hachette. FAC ¶ 18. Nor does he allege which titles, if any, survive the

release. If ultimately Plaintiff *cannot* specify any such allegations, then this entire action will be foreclosed by the Agreement. Thus, the Court should also require Plaintiff to file a more definite statement particularizing what, if any, alleged infringement post-dates December 2013. Indeed, a more definite statement is particularly warranted here as Rule 8 requires a plaintiff asserting a copyright infringement claim to allege with "sufficient clarity" "by what acts *during what time*" the defendant allegedly "infringed the copyright" at issue. *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd sub nom. Kelly v. L.L. Cool J*, 23 F.3d 398 (2d Cir. 1994) (granting Rule 12(e) motion where plaintiff's allegations "fail to plead with sufficient clarity" each element "of a copyright infringement claim"); *Cole v. John Wiley & Sons, Inc.*, 2012 WL 3133520, at *13 (S.D.N.Y. Aug. 1, 2012) ("Plaintiff's allegations are inadequate because Plaintiff fails to identify the time period during which any infringing acts occurred."); *Psychic Readers Network, Inc. v. A&E Television Networks, LLC*, 2025 WL 2532292, at *3 (S.D.N.Y. Sept. 3, 2025) ("Rule 8 requires that the particular infringing acts be set out with some specificity.").

In sum, Plaintiff's claims are barred by the release at least to the extent they stem from alleged pre-December 2013 acts. FAC, Ex. B. If any claims survive Hachette's Rule 12(b)(6) motion, the Court should require Plaintiff to provide a more definite statement to meet his obligations under Rule 8, prevent unnecessary motion practice, and conserve judicial and party resources. Indeed, a more definite statement can "assist the court and the parties" and "facilitate" more efficient proceedings by requiring plaintiffs to plead sufficient factual detail to illuminate whether "the essential elements" of a claim are "readily discernable." *Allco Fin. Ltd. v. Roisman*, 2021 WL 12284779, at *2 (D. Vt. Sept. 16, 2021).

## III.    THE COURT SHOULD STAY DISCOVERY

Under its broad authority to manage discovery, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 125 (2d Cir. 2008), the Court should stay discovery while this motion is pending to

conserve court and party resources. Courts regularly stay discovery when, like here, a dispositive motion is pending. *E.g.*, *Del Mar TIC I, LLC v. Bancorp Bank*, 2024 WL 1348501, at *1 (S.D.N.Y. Mar. 29, 2024) ("Because Defendant's success on the motion to dismiss would dispose of the entire action, this factor weighs in favor of granting the requested stay."); *Felberbaum v. LVNV Funding LLC*, 2022 WL 493501, at *2 (S.D.N.Y. Feb. 17, 2022) (Román, J.) ("A stay of discovery is appropriate pending resolution of a potentially dispositive motion where the pending dispositive motion appears to have substantial grounds or, stated another way, does not appear to be without foundation in law." (cleaned up)); *Negrete v. Citibank, N.A.*, 2015 WL 8207466, at *1 (S.D.N.Y. Dec. 7, 2015) ("Defendants' motion to dismiss is sufficient to support a stay because it is potentially dispositive, and appears to be not unfounded in the law." (quotation omitted)). This Court should similarly exercise its authority to stay discovery pending resolution of Hachette's motion here. Moreover, Hachette will be prejudiced if discovery is permitted, as it "will have to spend considerable time and money responding to discovery" despite the strength of its present motion. *Felberbaum*, 2022 WL 493501, at *3.

## CONCLUSION

Hachette respectfully submits that the Court should dismiss this action with prejudice. If any claims survive, the Court should order Plaintiff to provide a more definite statement.

Dated: November 19, 2025
New York, New York

MAYER BROWN LLP

By: /s/ *Allison M. Aviki*
Allison M. Aviki
1221 Avenue of the Americas
New York, New York 10020
aaviki@mayerbrown.com
Tel: (212) 506-2500

*Counsel for Defendant Hachette Book Group, Inc.*

## WORD COUNT CERTIFICATION

I hereby certify that the text, including footnotes, of the aforementioned Memorandum of Law contains 7,411 words and 24 pages in compliance with the Court's Individual Rules of Practice and L.R. 7.1(c), as calculated by the word-processing software used to draft the Memorandum.

Dated:  November 19, 2025
New York, New York

MAYER BROWN LLP

By: /s/ *Allison M. Aviki*
Allison M. Aviki
1221 Avenue of the Americas
New York, New York 10020
aaviki@mayerbrown.com
Tel: (212) 506-2500

*Counsel for Defendant Hachette Book Group, Inc.*